**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MICHAEL COE**                                        **CIVIL ACTION**

**versus**                                                    **NO. 12-2658**

**N. BURL CAIN**                                         **SECTION: "G" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Michael Coe, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On July 15, 2009, he was convicted of second degree murder under

Louisiana law.[1] On July 23, 2009, he was sentenced to a term of life imprisonment without benefit

of probation, parole, or suspension of sentence.[2] On May 11, 2010, the Louisiana Fifth Circuit Court

of Appeal affirmed that conviction and sentence.[3] The Louisiana Supreme Court denied his related

writ application on December 17, 2010.[4]

On October 18, 2011, petitioner filed an application for post-conviction relief with

the state district court.[5] That application was denied on January 25, 2012.[6] His related writ

applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on March 27,

2012,[7] and by the Louisiana Supreme Court on September 21, 2012.[8]

---

[1] State Rec., Vol. V of VIII, transcript of July 15, 2009, p. 138; State Rec., Vol. II of VIII, minute entry dated July 15, 2009; State Rec., Vol. I of VIII, jury verdict form.

[2] State Rec., Vol. V of VIII, transcript of July 23, 2009, p. 16; State Rec., Vol. I of VIII, minute entry dated July 23, 2009.

[3] State v. Coe, 40 So.3d 293 (La. App. 5th Cir. 2010) (No. 09-KA-1012); State Rec., Vol. I of VIII.

[4] State v. Coe, 51 So.3d 17 (La. 2010) (No. 2010-KO-1245); State Rec., Vol. I of VIII.

[5] State Rec., Vol. I of VIII.

[6] State Rec., Vol. I of VIII, Order dated January 25, 2012.

[7] Coe v. Cain, No. 12-KH-188 (La. App. 5th Cir. Mar. 27, 2012); State Rec., Vol. I of VIII.

[8] State ex rel. Coe v. State, 98 So.3d 332 (La. 2012) (No. 2012-KH-0994); State Rec., Vol. I of VIII.

On October 24, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[9]  The state concedes that the federal application is timely and that petitioner exhausted his remedies in the state courts.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[9] Rec. Doc. 1.

[10]  Rec. Doc. 9, p. 8.

As to pure questions of law and mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases. A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways. First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not

> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

      While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>      If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.*  *As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

<u>II. Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> Around 1:30 p.m. on February 23, 2008, Tabitha Chiasson heard someone yelling for help in the parking lot of Laborie's Supermarket in Marrero. She ran towards the yelling and observed a male leaning out of a truck trying to steal a woman's purse. The woman, who was later identified as Patricia Landry, was still holding onto the purse's strap, while the male was tugging on the purse. Ms. Chiasson explained that it appeared the truck was being used as leverage, with the driver starting and stopping it. Fearing that the victim would be run over by the truck, Ms. Chiasson tried to pull Ms. Landry back while trying to push the male away and yelled for them to let go. The driver then cut the wheel causing the victim to fall. The victim was dragged underneath the truck where the truck's back tire rolled over her back.
>
> Ms. Chiasson remained with the victim and told her to "hang on." Nurses on the scene tried to revive the victim until an ambulance arrived, but the victim died. An autopsy revealed the 63-year-old victim died as a result of multiple blunt force injuries including rib fractures, collapsed lungs and a spinal fracture.
>
> When the police arrived, Ms. Chiasson was able to describe two of the truck's occupants. She stated that the male holding the purse had a big mustache, brown hair, was dirty, and smelled bad. She described the driver as a dirty-looking, pasty-white, skinny female with long, strawberry-blonde hair, and green eyes. Ms. Chiasson believed there was someone else in the back of the truck but was unable to see the person because of the tinted windows. She further noted there was no license plate on the bumper.
>
> The truck, described as a red Dodge Ram, quickly left the parking lot and passed near a seafood stand in the parking lot of Laborie's. Bonnie Gras, who owned and worked at the seafood stand, had heard a lady screaming in the parking lot and saw the truck leaving. She explained that she initially believed the truck had gone over a speed bump, but later learned what had happened. Ms. Gras noted the truck pulled out of the parking lot so quickly, its wheels screeched as it turned the corner. She stated the truck's passenger window was down and she was able to see the person in the passenger seat. Ms. Gras gave a description of the passenger to the

police and indicated she thought she recognized him as having accompanied one of her customers, Roy Williams, to her seafood stand two or three times in the past. She further described a female occupant of the truck as having long dirty blonde hair.

Shortly after the truck left the Laborie's parking lot, a 9-1-1 call was made by Connie Dutreil in connection with an automobile accident she had with a red Dodge Ram truck approximately four or five miles from Laborie's. Ms. Dutreil stated the truck, driven by a female with two-tone blonde and brown hair, turned in front of her and the two vehicles slid into each other. She explained the truck took off and she followed it. She was able to give the 9-1-1 operator the temporary license plate number of the truck, which was located in its back window. As Ms. Dutreil followed the truck, she observed a black purse being thrown from the passenger side of the truck. Ms. Dutreil also observed the driver and passenger switch seats. Thereafter, the male driver put the truck in reverse, backed into Ms. Dutreil totaling her car, and then left. Ms. Dutreil subsequently looked inside the discarded purse for identification and found the victim's name on several items in the purse.

Based on Ms. Gras' indication that she had seen the truck's passenger with her customer, Roy Williams, the police interviewed Mr. Williams. Mr. Williams provided the police with three names, including defendant's name. Three photographic lineups were subsequently prepared and shown to Ms. Gras. She identified defendant from one of the lineups as the passenger of the truck. Ms. Chiasson, who helped the victim at the time of the purse snatching, also identified defendant from a photographic lineup as the passenger of the truck. Ms. Chiasson further identified co-defendant, [Cherie] Hayden, from a photographic lineup as the female driver of the truck.

An arrest warrant was obtained for defendant and he was arrested the next day at his sister's residence. The residence was searched but nothing of evidentiary value was found. Defendant was subsequently advised of his rights and interviewed. During his interview, defendant indicated he was with Hayden throughout the day and evening on the day of the murder. He further denied any involvement or knowledge of the murder. According to Lieutenant Don Meunier, when confronted with Ms. Gras' positive identification of him, defendant appeared upset and declined to answer additional questions. Defendant ultimately declined to give a taped statement.

A third suspect, Matthew Vinet, was later identified based on the receipt of an anonymous call made to the Detective Bureau.[FN2] Vinet was the registered owner of the red Dodge Ram truck. The

truck was subsequently located in the possession of a third party, who was cleaning the truck after Vinet had brought the truck to him. A search of the red truck revealed a black piece of plastic from the rear bumper that fit like a puzzle to a piece of plastic recovered from the car Ms. Dutreil was driving at the time of her automobile accident.

> [FN2] Vinet was charged with accessory after the fact of second degree murder but later pled guilty to obstruction of justice.

According to Vinet, he had picked up defendant and Hayden in his truck on the day of the murder after their car broke down. Vinet explained Hayden took over driving because he and defendant were getting loaded smoking crack. He stated he got into the backseat behind the passenger's seat and defendant was in the passenger's seat. Vinet stated that defendant wanted to get more crack, and they went to Laborie's "[t]o make the deal." He said that after defendant exited the truck, he heard screaming and saw defendant trying to grab someone's purse. He said that he saw the woman running after defendant, but defendant got back into the truck with her purse. Vinet said they left the parking lot and wrecked with the same car twice, but at different locations. He also testified that defendant threw the purse out of the window. He further stated defendant and Hayden swapped seats, at which time defendant put the car in reverse and ran into the car that was behind them.

Defendant did not testify at trial but Hayden did. She testified that on the day of the murder, she picked defendant up at approximately 7:30 a.m. and brought him to "Jill's" house. She stated she left Jill's house around 12:30 or 12:45 p.m. to get ready for her granddaughter's birthday party, while defendant stayed at Jill's house. Hayden said she picked up defendant around 2:40 p.m. in her own green car and they went to her granddaughter's birthday party. According to Hayden's daughter, defendant arrived at the party around 3:00 p.m. Hayden stated defendant left the party in her car about thirty or forty-five minutes after they arrived, and did not return until about 8:30 p.m. Hayden denied any involvement in the incident at Laborie's and denied being in a red truck on the day of the incident. She admitted she was dating defendant at the time.[11]

---

[11] State v. Coe, 40 So.3d 293, 296-98 (La. App. 5th Cir. 2010) (No. 09-KA-1012); State Rec., Vol. I of VIII.

### III. Petitioner's Claims

Petitioner claims that he received ineffective assistance of counsel both at trial and on appeal. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v.

McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings.  Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting the claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881

(5th Cir. 2002). Moreover, the United States Supreme Court recently explained that, under the

AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly*

deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then

explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest

intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

### (A) Trial Counsel

Petitioner claims that his trial counsel was ineffective for failing to inform him of a plea offer and for not allowing him to testify at trial. In denying those claims during the post-conviction proceedings, the state district court first correctly summarized the law governing ineffective assistance claims in general, noting:

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984), and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. <u>State v. Legrand</u>, 2002-1462 (La. 12/3/03), 864 So.2d 89.

  To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the <u>Strickland</u> test must be established before relief will be granted by a reviewing court.

  Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonable likely to render effective assistance. <u>State v. Soler</u>, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.[12]

The court then went on to address petitioner's specific claims. As to his claim that trial counsel was ineffective for failing to inform him of a plea offer, the court held:

  Petitioner first argues that counsel was ineffective in failing to inform him of a plea bargain. Petitioner provides no evidence in support of this claim, and there is nothing in the court record to evidence that a plea bargain was ever offered. This claim is based purely on speculation. Petitioner does not prove that counsel was deficient. Furthermore, as the State points out in its response, there is nothing presented that shows defendant was prejudiced. Petitioner does not provide any supporting evidence that he would have pled guilty, as even at sentencing defendant refused to take responsibility for committing the crime and showed no remorse.[13]

---

[12] State Rec., Vol. I of VIII, Order dated January 25, 2012.

[13] <u>Id</u>.

The Louisiana Fifth Circuit Court of Appeal likewise rejected the claim, holding: "[R]elator first alleged that he had ineffective assistance of counsel for trial counsel's failure to inform him of a plea offer. However, relator presents no evidence to support the existence of a plea offer. Accordingly, he fails to meet his post-conviction burden of proof pursuant to La. C.Cr.P. art. 930.2."[14] The Louisiana Supreme Court then denied relief without assigning additional reasons.[15]

The United States Supreme Court has expressly held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012). Counsel's performance is therefore deficient if he allows a plea offer to expire without advising his client or allowing him to consider it. See id. Moreover, the Supreme Court has explained:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Id. at 1409.

---

[14] Coe v. Cain, No. 12-KH-188 (La. App. 5th Cir. Mar. 27, 2012); State Rec., Vol. I of VIII.

[15] State ex rel. Coe v. State, 98 So.3d 332 (La. 2012) (No. 2012-KH-0994); State Rec., Vol. I of VIII.

In the instant case, the Court need not reach the prejudice prong of the <u>Strickland</u> analysis because petitioner has not shown even that counsel performed deficiently. Specifically, as correctly noted by the state courts, petitioner has offered no evidence whatsoever in support of his self-serving allegation that the state ever in fact offered a plea agreement. Because he has not established that underlying fact on which his claim is premised, he obviously has not met his burden of proof. As a result, under the doubly deferential standards mandated by the AEDPA, there is no basis for this federal *habeas* court to find that state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This claim should therefore be denied.

Petitioner's claim that his trial counsel was ineffective for not allowing him to testify is likewise meritless. In the state post-conviction proceedings, the state district court rejected that claim, holding:

> Petitioner claims that counsel was ineffective for not allowing him to testify at trial. Of course, a defendant has the fundamental right to testify in his own defense at trial. However, petitioner does not provide any evidence that his right to testify was violated, and there is nothing in the court record that indicates that defendant was prohibited from testifying. In State v. Hampton, 00-522 (La. 3/22/[0]2), 818 So.2d 720, the Louisiana Supreme Court found that absent extraordinary circumstances indicating a conflict between attorney and client, the court should not inquire into a defendant's right to testify. The court should assume that by a defendant not taking the stand, he has knowingly and voluntarily waived his right to testify. As the State points out in its response, defendant does not rebut this presumption by showing that his attorney caused him to forfeit his right to testify by alleging specific facts that counsel told him or compelled him to remain silent.
>
> Additionally, petitioner fails to prove any prejudice. He does not state what his testimony would entail, or how it could have

> changed the outcome of the trial. Petitioner does not meet the
> Strickland standard, and relief as to this claim will be denied.[16]

The Louisiana Fifth Circuit Court of Appeal also denied relief, holding: "[R]elator contends that trial counsel was ineffective for not allowing him to testify in his own defense. Relator however presents nothing to support this allegation. A bare allegation that counsel prevented relator from testifying does not support a post-conviction claim that counsel interfered with relator's right to testify. State v. James, 05-2512 (La. 9/29/06), 938 So.2d 691."[17] The Louisiana Supreme Court then denied relief without assigning additional reasons.[18]

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). However, as correctly noted by the state courts, petitioner has again offered nothing other than his own self-serving allegations in support of his claim. He does not allege and the record does not suggest that he ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so. Of course, the mere fact that petitioner failed to stand up in open court and insist on testifying should not be dispositive of the issue. See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003). Nevertheless, this Court cannot ignore the fact that petitioner has never presented *any* evidence to corroborate his allegations, and that dooms his claim. As the United States Seventh

---

[16]  State Rec., Vol. I of VIII, Order dated January 25, 2012.

[17]  Coe v. Cain, No. 12-KH-188 (La. App. 5th Cir. Mar. 27, 2012); State Rec., Vol. I of VIII.

[18]  State *ex rel.* Coe v. State, 98 So.3d 332 (La. 2012) (No. 2012-KH-0994); State Rec., Vol. I of VIII.

Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify.  Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.   Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); Baker v. Cain, Civ. Action No. 06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); White v. Cain, Civ. Action No, 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918 (S.D. Tex. Nov. 29, 2005).[19]

---

[19]    Out of an abundance of caution, the Court further notes that if petitioner is perhaps also alleging that his counsel was ineffective for failing to call him testify, that claim fares no better.  A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008).  Further, such a matter is

In light of the complete lack of evidentiary support for petitioner's contention that his counsel refused to allow him to testify, it is clear that, under the doubly deferential standards mandated by the AEDPA, there is no basis for this federal *habeas* court to find that state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, this claim should be denied.

<u>(B) Appellate Counsel</u>

With respect to his appellate counsel, petitioner claims that counsel was ineffective for failing to supplement the direct appeal with a copy of the *voir dire* transcript. In denying that claim during the post-conviction proceedings, the state district court held:

> Petitioner next argues that appellate counsel was ineffective for failing to order voir dire transcripts. In reviewing claims of ineffective assistance of counsel on direct appeal, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the defendant. <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985). The Court gives great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues. <u>Jones v. Barnes</u>, 463 U.S. 745 (1985). This is true even where the weaker arguments have merit. <u>Id</u>. at 751-52.
>
> When the claim of ineffective assistance of appellate counsel is based on failure to raise the issue on appeal, the prejudice prong of the <u>Strickland</u> test requires the petitioner to establish that the

inherently one of trial strategy, and federal *habeas* courts are not to lightly second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. <u>Strickland</u>, 466 U.S. at 689. Petitioner has not demonstrated that there is a valid reason to vary from that general rule in this case.

appellate court would have granted relief, had the issue been raised. United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000).

   In this case, in relation to a juror being dismissed for serious medical reasons, petitioner argues that, "a full review of the voir dire transcript is necessary in order to be viewed for potential assignments of errors." He requests the court provide the voir dire transcript for his review in this claim. However, defendant fails to allege any constitutional claims or assignments of error. His request is purely speculative, as he cannot identify any specific claim, deficiency in counsel's actions, or prejudice resulting from not pursuing voir dire issues on appeal.

   The court finds that petitioner has not met his burden, as he does not establish that the appellate court would have granted relief. Petitioner is not entitled to relief on this claim, or for production of the voir dire transcript, as he does not provide adequate particular need.[20]

The Louisiana Fifth Circuit Court of Appeal likewise denied relief, holding:

   [R]elator argues that his appellate counsel was ineffective for "not pursuing *voir dire* transcripts." However, relator is not entitled to designate issues counsel shall raise on appeal. Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3038, 3312-13, 77 L.Ed.2d 987 (1983) (indigent defendants do not have a constitutional right to require appointed appellate counsel to argue all non-frivolous issues should counsel in the exercise of his professional judgment decline to pursue them). Further, the trial court did not err in denying relator's request for the *voir dire* transcripts because relator has not shown a particularized need for these documents. State ex rel. Simmons v. State, 94-2879 (La. 12/16/94), 647 So. 2d 1094, 1095.[21]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[22]

---

[20]  State Rec., Vol. I of VIII, Order dated January 25, 2012.

[21]  Coe v. Cain, No. 12-KH-188 (La. App. 5th Cir. Mar. 27, 2012); State Rec., Vol. I of VIII.

[22]  State *ex rel.* Coe v. State, 98 So.3d 332 (La. 2012) (No. 2012-KH-0994); State Rec., Vol. I of VIII.

Petitioner's claim concerns the selection of juror Leo Forrester. During *voir dire*, Forrester sent a note to the judge concerning service on the jury. As petitioner alleges, appellate counsel therefore sought a copy of the *voir dire* transcript to assess it for potential errors. However, petitioner contends that counsel then abandoned that request. That is untrue. The record reflects that counsel's motion was granted and that the transcript was prepared and filed into the record on January 5, 2010.[23]

If petitioner is perhaps faulting counsel for ultimately choosing not to assert a claim based on the transcript, that claim clearly fails. As the state courts correctly noted, appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

The applicable test is instead whether the ignored issue was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). That is not the case here. The transcript reflects that Forrester was concerned with two issues: he believed that he had perhaps

---

[23] State Rec., Vol. VI of VIII.

seen the defendants "around town" and that he took medication for a heart condition. As to the first

concern, he stated that he would in no way be swayed by the fact that he might have previously seen

the defendants. As to the second concern, the judge assured Forrester that his medication could be

brought to him and that the jurors would be allowed to take breaks when necessary and made

comfortable. The Court therefore sees no nonfrivolous claim that counsel could have asserted based

on the transcript, much less one stronger than the claims actually presented on appeal (i.e., that the

cases of petitioner and his codefendant should have been severed for trial, that evidence of other

crimes was wrongly admitted, and that there was insufficient evidence to support the conviction).

In light of the foregoing, it is clear that, under the doubly deferential standards

mandated by the AEDPA, there is no basis for this federal *habeas* court to find that the state court

decision denying petitioner's claim "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). Accordingly, this Court should likewise deny the claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Michael Coe be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this seventeenth day of December, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.